698 So.2d 967 (1997)
Ramona GUIDROZ, et al., Plaintiffs-Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.
No. 97-200.
Court of Appeal of Louisiana, Third Circuit.
June 25, 1997.
Rehearing Denied September 25, 1997.
*968 Andre F. Toce, Lafayette, for Ramona Guidroz et al. and Gereline Frederick (Cross Claim).
Jill Marie DeCourt, New Iberia, Michael J. Breaux, New Orleans, for State Farm Mutual Automobile Ins. Co., et al.
Before YELVERTON, SAUNDERS and GREMILLION, JJ.
GREMILLION, Judge.
In this appeal the plaintiff, Ramona Guidroz, alleges the trial court erred in granting a peremptory exception of no cause of action in favor of the defendant, State Farm Mutual Automobile Insurance Company. The plaintiff in cross-claim, Gereline Frederick, also appeals the trial court's finding that State Farm was not in bad faith in exposing her to an excess judgment.

*969 FACTS
On August 19, 1993, Ramona was driving south on Rees Street in Breaux Bridge in her 1988 Chevrolet van when a 1988 Ford Tempo driven by Chantel Frederick exited the Sonic Drive-In restaurant parking lot and collided with the van. Ramona's minor daughters, Deanna and Heather, were passengers in the van. The vehicle driven by Chantel was owned by her mother, Frederick, and insured by State Farm with a policy providing liability coverage in the amount of $25,000.00 per person and $50,000.00 per accident. Ramona also had a policy with State Farm providing coverage for medical payments.
As a result of this accident, Ramona complained of pain in her lower back, burning sensations in her neck and both shoulders, nausea, and contusions to her lower back. Deanna also complained of minor injuries from the accident. After attempting conservative treatment, Ramona sought treatment from Dr. John Cobb, an orthopaedic surgeon, on September 27, 1993. On October 11, 1993, a cervical MRI was performed on Ramona which displayed a significant protrusion at the C5-6 disc level with a predominance to the left and compression of her spinal cord. On October 20, 1993, as a result of the continuing pain she was experiencing, Dr. Cobb recommended surgery to fuse her cervical spine. The fusion was performed on December 2, 1993, at Our Lady of Lourdes Regional Medical Center. As of January 27, 1993, Ramona's medical expenses totaled $14,172.90.
On three occasions Ramona sent medical bills to State Farm for payment. On September 16, 1993, she forwarded to State Farm medical bills from Gary Memorial Hospital, Dr. Marelle Young, and Begnaud's Pharmacy for her treatment as well as medical bills from Dr. Lewis Cummings for Deanna's treatment. On October 12, 1993, medical bills from Dr. Cobb, Southern Health Systems, Medlog, Inc., and the accident report were sent to State Farm by Ramona. On October 20, 1993, Ramona sent additional medical bills from Dr. Cobb.
On November 8, 1993, Ramona made an offer to settle with State Farm. Included with this offer were a medical expenses summary totaling $3,017.24, the results of the MRI performed on October 11, 1993, and Dr. Cobb's recommendation for surgery. The offer provided State Farm thirty days to accept. In response, State Farm requested an independent medical exam.
On December 27, 1993, Ramona made another offer to settle. Included in this correspondence were medical bills from Lourdes for the cervical spinal fusion and pharmacy bills. Once again, State Farm was given thirty days to accept this offer to settle for Frederick's policy limits. This deadline passed with no response from State Farm.
On March 10, 1994, Ramona and her husband, Perry, filed a petition for damages on their behalf and on behalf of Deanna and Heather for the injuries sustained in the accident including claims for loss of consortium. On January 30, 1995, the Guidrozes amended their petition and asserted a claim for the assessment of penalties and attorney's fees against State Farm for its failure to adjust their claims fairly and promptly pursuant to La.R.S. 22:1220. Frederick answered this amended petition and filed a cross-claim against State Farm alleging she was exposed to an excess judgment because of its bad faith failure to settle this matter within her policy limits.
The trial of this matter was held March 4-6, 1996. All claims, except for the bad faith cross-claim, were to be tried by a jury. On the date of the trial, State Farm filed an exception of no cause of action in regards to the La.R.S. 22:1220 claim asserted by the Guidrozes. The trial court ruled in favor of State Farm, finding their petition stated no allegations of fact regarding the action or inaction of State Farm in handling the Guidrozes' claim.
After the presentation of evidence, the jury returned a verdict in favor of the Guidrozes and against Frederick for $276,126.00. After hearing the testimony on the cross-claim, the trial court found in favor of State Farm and dismissed the claim. From this judgment, both the Guidrozes and Frederick appeal.

*970 ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error, Frederick asserts the trial court erred in finding that State Farm was not in bad faith in unreasonably exposing her to an excess personal judgment.
In the absence of bad faith, a liability insurer generally is free to settle or to litigate at its own discretion, without liability to its insured for a judgment in excess of the policy limits. William Shelby McKenzie & H. Alston Johnson, III, 15 Louisiana Civil Law Treatise-Insurance Law and Practice § 218 (1986). On the other hand, a liability insurer is the representative of the interests of its insured, and the insurer, when handling claims, must carefully consider not only its own self-interest, but also its insured's interest so as to protect the insured from exposure to excess liability. Holtzclaw v. Falco, Inc., 355 So.2d 1279 (1978) (on rehearing). Thus, a liability insurer owes its insured the duty to act in good faith and to deal fairly in handling claims. Id.

* * * * * *
Thus, the determination of whether the insurer acted in bad faith turns on the facts and circumstances of each case. Of course, an insurer is not obliged to compromise litigation just because the claimant offers to settle a claim for serious injuries within the policy limits, and its failure to do so is not by itself proof of bad faith. The determination of good or bad faith in an insurer's deciding to proceed to trial involves the weighing of such factors, among others, as the probability of the insured's liability, the extent of the damages incurred by the claimant, the amount of the policy limits, the adequacy of the insurer's investigation, and the openness of communications between the insurer and the insured. Nevertheless, when an insurer has made a thorough investigation and the evidence developed in the investigation is such that reasonable minds could differ over the liability of the insured, the insurer has the right to choose to litigate the claim, unless other factors, such as a vast difference between the policy limits and the insured's total exposure, dictate a decision to settle the claim.
Smith v. Audubon Ins. Co., 95-2057, p. 7-10 (La.9/5/96); 679 So.2d 372, 376-377 (footnote omitted).
During the hearing on the cross-claim, the trial court heard the testimony of Ramona and Sissy Landry. Ramona testified that she discussed her claim with her attorney and decided to settle for the $25,000.00 policy limits. She testified that, after the deadline from the November 8, 1993 letter had passed without a response from State Farm, she became quite anxious and considered filing suit because she felt State Farm was not taking her claim seriously. However, she decided to make another demand on State Farm to settle and again provided a thirty-day period for acceptance. After this deadline had passed with no word from State Farm, she withdrew all settlement authority from her attorney and filed suit on March 10, 1994.
Sissy Landry, the State Farm adjustor handling the claim, acknowledged that their insured, Frederick, was the sole cause of the accident and would be responsible for any resulting damages. She further testified that although she was given the authority to settle the claim for $25,000.00 on January 7, 1994, she decided not to settle until she received the operative reports. Landry stated that she waited three weeks after receiving authority to settle before making an offer to Guidroz because she was busy due to the demands of her job. She further testified that she realized that the claim would exceed the policy limits when she received the operative reports on either January 24 or 25, 1994, still within the thirty-day period provided for in the second settlement offer.
Considering the above testimony, we find that the trial court committed manifest error in finding that State Farm did not act in bad faith by unreasonably exposing Frederick to an excess judgment. Clearly, Frederick was solely responsible for the accident and the resulting damages to Guidroz. Likewise, the damages incurred by Guidroz were more than likely to eclipse the policy limits, and, in fact, the jury verdict exceeded the policy limits by approximately $250,000.00. In particular, *971 we find the evidence shows that State Farm did not conduct an adequate investigation of the claim.
The only affirmative action taken by State Farm during the two thirty-day periods in which Guidroz attempted to settle the claim was the request for an independent medical exam. Landry attributes State Farm's inaction to the lack of information, but this lack of information was due to her own failure. Furthermore, on January 5, 1994, Landry requested authority to settle the claim for $25,000.00 and received authority to do so two days later, yet she made no offer to Guidroz despite being in receipt of two correspondences from Guidroz's attorney illustrating a willingness to settle this claim. Landry made an offer after the deadline had passed in a memo-gram dated January 28, 1993, which was not received by counsel for Guidroz until February 3, 1993.[1] Considering the potential excess liability faced by their insured and the lack of any substantial investigation into the claim, we find that State Farm acted in bad faith in not settling the claim in a timely manner as well as in their duty to protect Frederick from an excess judgment. We, therefore, reverse the trial court and find State Farm liable for the amount of the judgment in excess of her policy limits.

ASSIGNMENT OF ERROR NUMBER TWO
The Guidrozes allege that the trial court improperly granted State Farm's exception of no cause of action dismissing their claim under La.R.S. 22:1220. The peremptory exception of no cause of action is designed to test the legal sufficiency of the petition by determining whether the plaintiff is afforded a remedy in law based on the facts alleged in the pleading. Lybrand v. Newman, Drolla, Mathis, Brady & Wakefield, 95-9 (La.App. 5 Cir. 10/31/95); 663 So.2d 850. In evaluating an exception of no cause of action, the court must accept well-pleaded allegations of fact as true, and the issue at the hearing on the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Pittman v. Beebe, 95-1342 (La.App. 3 Cir. 3/6/96); 670 So.2d 761, writ denied, 96-882 (La.5/10/96); 672 So.2d 931.
An insured or a claimant may seek damages and penalties under La.R.S. 22:1220 for an insurer's failure to settle claims in good faith. La.R.S. 22:1220 provides in pertinent part:
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:

(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
(3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.
(4) Misleading a claimant as to the applicable prescriptive period.
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the *972 claimant when such failure is arbitrary, capricious, or without probable cause.
(Emphasis added.)
The Louisiana Supreme Court has recently determined that La.R.S. 22:1220 does not impose a penalty on insurers for their failure to make a reasonable effort to settle claims with third-party claimants unless the third-party claimant can show that the insurer breached its duty of good faith and fair dealing by committing or performing one of the acts enumerated in La.R.S. 22:1220(B). Theriot v. Midland Risk Ins. Co., 95-2895, (La.5/20/97); ___ So.2d ___, on rehearing.
Paragraph thirty-one of the Guidrozes' amended petition reads as follows:
31.
Despite receipt of the medical bills, medical reports and diagnostic studies objectively documenting RAMONA's injuries, STATE FARM failed to pay RAMONA and her family any amount for their claims within sixty (60) days after satisfactory proof of loss; and such failure was arbitrary, capricious and without probable cause, entitling RAMONA and PERRY GUIDROZ to general and special damages arising from STATE FARM's breach of its duty of good faith and to penalties pursuant to La. R.S. 22:1220.
Clearly, this paragraph does not state a cause of action under La.R.S. 22:1220(B)(1)-(4). Although the language somewhat mirrors the language of La.R.S. 22:1220(B)(5), that subsection only applies to "any person insured by the contract," not claimants such as the Guidrozes. As such, the Guidrozes have failed to allege facts which would entitle them to the relief they seek. Therefore, the trial court's decision granting State Farm's peremptory exception of no cause of action is affirmed.

CONCLUSION
For the reasons set forth above, the judgment of the trial court dismissing Gereline Frederick's claim against State Farm Mutual Automobile Insurance Company is reversed and set aside. It is now ordered, adjudged, and decreed that there be judgment herein in favor of Gereline Frederick and against State Farm Mutual Automobile Insurance Company for the full amount of the excess judgment, with a credit for the amount previously tendered. Furthermore, the judgment of the trial court granting State Farm Mutual Automobile Insurance Company's peremptory exception of no cause of action is affirmed. Costs of this appeal are assessed one-half to State Farm Mutual Automobile Insurance Company and one-half to the Guidrozes.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[1] On August 1, 1993, six months after the expiration of the final deadline, Landry and State Farm made an unconditional tender of $25,564.10 which was rejected. However, after this tender, the record is void of any evidence that State Farm attempted to settle this claim.

On March 5, 1996, after Frederick discharged the attorney provided to her by State Farm and secured counsel of her choosing, State Farm then deposited with the court the policy limits plus court costs and legal interest.