799 So.2d 624 (2001)
Deborah WILEY, Plaintiff-Appellee.
v.
Valeria McDAY, et al., Defendants-Appellants.
No. 34,985-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 2001.
*625 Lunn, Irion, Salley, Carlisle & Gardner by Penny N. Nowell, J. Martin Lattier, Shreveport, Counsel for Defendants-Appellants, Valeria McDay and USAA.
Johnson & Placke by Don H. Johnson, West Monroe, Counsel for Plaintiff-Appellee, Deborah Wiley.
Davenport, Files & Kelly by Carey B. Underwood, Monroe, Counsel for Defendant-Appellee, Illinois National Ins. Co.
Before BROWN, STEWART and GASKINS, JJ.
STEWART, J.
At issue in this appeal is whether the trial court erred in assessing penalties, damages, and attorney fees under La. R.S. 22:1220 against the insurer and in favor of a third-party claimant. For the reasons discussed herein, we affirm that portion of the judgment awarding penalties and damages, but reverse the award of attorney fees.

FACTS
On July 17, 1995, the plaintiff, Deborah Wiley, was involved in an automobile accident with the defendant, Valeria McDay, in Bossier City, Louisiana. McDay was insured by United Services Automobile Association (USAA), and Wiley was insured by Illinois National Insurance Company.
As a result of the accident, Wiley's new 1995 Honda Civic was extensively damaged. Wiley had owned her vehicle, which had 15,199 miles on it, for only eight months. Wiley had financed her car through Central Bank in the amount of $14,718.28, including interest. The car was deemed a total loss. Liability was not at issue. Consequently, USAA sent a check for more than $12,000 to Central Bank.[1] USAA also obtained possession of the car and sent it to Texas salvage yard. Upon receipt of the check from USAA to pay off *626 the loan on the demolished Honda Civic, Central Bank informed Wiley that she could purchase a replacement vehicle which it would finance. Since she had to return the rental car that she had been driving, Wiley purchased a new vehicle that same day. About a week later, Central Bank informed Wiley that USAA had stopped payment on the check. Wiley was then required to make payments on both car loans-the unpaid balance on the loan for the wrecked Honda Civic and the amount due on the loan for the new vehicle. The reason for the stop payment by USAA was its realization that its policy had only a $10,000 property damage limit. However, USAA never tendered its policy limits to Wiley after stopping payment on the check to Central Bank.
After USAA's inexplicable actions, Wiley presented her property damage claim to her own insurer. Illinois National valued the Honda Civic at $13,949, but deducted $1,520 on the basis of high mileage and $3,000 as the salvage value of the vehicle. It also subtracted the $500 deductible under its policy. Over Wiley's objections to the deductions, Illinois tendered only $8,929 for the $13,949 loss suffered by Wiley. The check was sent to Central Bank and applied to the car loan on the Civic. Unfortunately, Wiley had to continue to make payments to satisfy the remainder of that loan, including interest in the amount of $1,242.73.
On September 20, 1995, Wiley filed suit against McDay and USAA. She also named Illinois National as a defendant, against whom she sought penalties and attorney fees as pled in the petition. She alleged that Illinois National was arbitrary and capricious in its refusal to pay the full value of her totaled car. McDay and USAA filed a general denial in which they claimed comparative fault. Illinois National filed an answer and a cross-claim against the other defendants seeking indemnification.
A bench trial was held in February 2000. In her pre-trial brief filed the day before trial, Wiley referred to La. R.S. 22:658 and 22:1220(B)(2) in the context of USAA's failure to complete a settlement within 30 days. At trial, USAA moved to dismiss Wiley's claim for penalties and attorney fees on the basis that Wiley failed to include the claim in her petition and was thus precluded from pursuing the claim at trial. The trial court denied USAA's oral motion to dismiss, but left the matter open for the filing of a deposition by USAA's adjuster. No such deposition was ever filed by USAA.
In a written opinion rendered in August 2000, the trial court found that due to USAA's arbitrary and capricious handling of the claim and failure to pay the claim timely, Wiley was forced to go to her own insurer, which also mishandled the claim. According to the trial court, Wiley should have been paid by both insurance companies and given the chance to pay the balance of her loan "out of her pocket." Then, she could have purchased another car. The trial court assessed the value of the Honda Civic at $12,429. It found USAA in violation of La. R.S. 1220(A), (B)(2), and (5). The trial court then found that Wiley suffered damages of $3,500-the difference between the value of her car ($12,429) and the amount paid by Illinois National ($8,929). The trial court also found that Wiley suffered damage due to the additional interest on the Civic loan in the amount of $1,242.73. Thus, the trial court rendered a judgment against USAA in the amount of $4,742.73, with interest from judicial demand as damages, plus double that amount in penalties ($9,485.46), and $5,000 in attorney fees. Wiley's demands against Illinois National were denied, and Illinois National was *627 deemed entitled to recover $8,929 with interest from the date of payment from USAA.
USAA and McDay appealed this judgment.

DISCUSSION
The defendants first contend that the trial court erred in considering Wiley's claims for penalties and attorney fees under La. R.S. 22:1220 when she did not specifically plead those claims in her petition. Wiley asserts that the matter was properly before the trial court by virtue of La. C.C.P. art. 1154, which states in relevant part:
If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence.
At the beginning of trial, counsel for USAA and McDay objected to the litigation of attorney fees and penalties. When the trial court indicated that it was inclined to allow evidence on the issue, the defense requested a continuance. Wiley's attorney then suggested that the matter be left open to allow USAA to depose its adjuster. This suggestion was agreed to by USAA and the trial court. At the conclusion of trial, USAA and McDay moved to dismiss the claims for penalties and attorney fees as unsupported by the evidence. The trial court denied the motion and ordered the matter left open for the deposition of the USAA adjuster. USAA never filed the deposition into the record.
Items of special damages must be specifically alleged. La. C.C.P. art. 861. Statutory penalties and attorney fees are items of special damage which must be specifically alleged. Dennis v. Allstate Insurance Company, 94-305 (La.App. 5th Cir.10/25/94), 645 So.2d 763. Generally, a trial court may not award special damages which have not been specifically plead. The purpose of the specificity requirement is to avoid the imposition of surprise upon the defendant. Stevens v. Winn-Dixie of Louisiana, 95-0435 (La. App. 1st Cir.11/9/95), 664 So.2d 1207.
Under the circumstances presented in the instant case, we find that the pleadings were orally amended and that USAA chose not to avail itself of the adequate procedure established by the trial court to eliminate any element of surprisethe subsequent filing of a deposition of its adjuster. Therefore, the issue of attorney fees and penalties was properly before the trial court.
We next address the contention of USAA and McDay that the award of penalties and attorney fees under La. R.S. 22:1220 was inappropriate on this record, namely due to the absence of proof of a written settlement agreement.
In relevant part, La. R.S. 22:1220 states:
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

*628 B. Any one of the following facts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
(3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.
(4) Misleading a claimant as to the applicable prescriptive period.
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate fillings.
As stated above, the insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. La. R.S. 22:1220(A). A right of action is available to both insureds and third-party claimants under La. R.S. 22:1220. However, only the commission of one of the specific acts listed in La. R.S. 22:1220(B)will support a private right of action under the statute. Theriot v. Midland Risk Insurance Company, 95-2895 (La.5/20/97), 694 So.2d 184; Smith v. Midland Risk Insurance Company, 29,793 (La.App.2d Cir.9/24/97), 699 So.2d 1192. Furthermore, La. R.S. 22: 1220 is a penal statute and must be strictly construed. Harrington v. Cato Corporation, 32,055 (La.App.2d Cir.6/16/99), 740 So.2d 732.
While a private right of action under La. R.S. 22:1220 is available to Wiley, a third-party claimant, recovery is only available if USAA's conduct fits one of the five acts listed in the statute. Under the facts presented, neither the third nor the fourth acts listed in the statute provide a basis for recovery. Furthermore, the fifth act listed expressly provides that penalties for the failure to pay a claim within sixty days after receipt of satisfactory proof of loss apply only to claims due an insured. La. R.S. 22:1220(B)(5); Smith v. Midland Risk Insurance Company, supra. Penalties may also be recovered when the insurer fails "to pay a settlement within thirty days after an agreement is reduced to writing." La. R.S. 22:1220(B)(2). Although USAA sent a check to Central Bank, there is no proof in the record that a settlement agreement between the parties was ever reduced to writing. Instead, Wiley testified that she was contacted by USAA and was told that the total value of her loss would be paid. This leads us to determine whether USAA's conduct can be construed as "misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue" as provided in La. R.S. 22:1220(B)(1).
Considering the facts of this case, we find that USAA misrepresented pertinent facts relating to a coverage issue for purposes of assessing penalties under La. R.S. 22:1220. The evidence establishes that Wiley was contacted by USAA and informed that her wrecked vehicle would be *629 appraised and the total value of her loss would be paid. Moreover, according to Wiley, USAA forwarded a check to Central Bank for the amount of her lossan amount sufficient to pay off her outstanding car loan. USAA also had the totaled Honda Civic picked up and delivered to a salvage yard in Texas. Wiley never saw the vehicle again and did not receive the salvage value of it. Apparently believing that USAA had made good on its representation that it would pay her loss, Wiley then purchased a new vehicle which was also financed by Central Bank. USAA then stopped payment on its check, and in disregard of it representations that it would pay the total value of Wiley's loss, USAA never tendered another check to either Central Bank or Wiley. No explanation was given by USAA as to why it failed to forward another check to cover the loss sustained by Wiley in the vehicular accident. USAA simply represented that it would cover the loss sustained by Wiley and then failed to do so. These facts clearly evidence a misrepresentation by USAA of pertinent facts as to its coverage of losses sustained by a third-party claimant and constitute an egregious breach of the insurer's duties under La. R.S. 22:1220.
Although our analysis differs from that of the trial court in its written reasons for judgment, we note that an appeal lies from the judgment itself and not the reasons for judgment. See Kirkham v. Pumphrey, 34,349 (La.App.2d Cir.12/20/00), 775 So.2d 634, writ denied, XXXX-XXXX (La.3/30/01), 788 So.2d 1191. Moreover, as an appellate court, we are charged to render any judgment which is just, legal, and proper upon the record on appeal. La. C.C.P. art. 2164. The record on appeal provides sufficient basis for us to affirm the trial court's judgment awarding penalties and damages under La. R.S. 22:1220, though for reasons other than those expressed by the trial court in its written reasons.
As to attorney fees, we observe that La. R.S. 22:1220 does not provide for attorney fees. See Calogero v. Safeway Insurance Company of Louisiana, 99-1625 (La.1/19/00), 753 So.2d 170. An award of attorney fees is also not permissible under La. R.S. 22:658. Since there is no "written agreement of settlement" in the instant case, La. R.S. 22:658(A)(2) is not applicable. While La. R.S. 22:658(A)(4) appears applicable to the instant situation, the Louisiana Supreme Court stated in the Theriot case that that portion of the statute was not a basis for a penalty action by third parties. See Woodruff v. State Farm Insurance Company, 99-818 (La. App. 4th Cir.6/14/00), 767 So.2d 785. Consequently, we find that attorney fees are not recoverable and reverse that portion of the trial court's judgment.

CONCLUSION
For the reasons discussed, we affirm that portion of the trial court's judgment awarding the plaintiff, Deborah Wiley, damages and penalties, and we reverse that portion of the judgment awarding attorney fees.
REVERSED IN PART AND AFFIRMED.
GASKINS, J., concurs and dissents with reasons.
GASKINS, J., concurring in part and dissenting in part.
I respectfully concur in part and dissent in part from the majority's opinion.
On the issue of attorney fees, the majority has reversed the trial court, finding no statutory basis for that award. I agree and concur on this issue.
*630 However, I respectfully dissent from the majority's affirmation of penalties and damages. The majority apparently did not agree with the trial court that the circumstances here amounted to a settlement "reduced to writing" under La. R.S. 22: 1220(B)(2). Instead, it based its affirmation on La. R.S. 22: 1220(B)(1), "misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue." While being sympathetic to Ms. Wiley's situation and realizing that she was unfairly treated by USAA, I am mindful that these penal statutes are to be strictly construed. Finding that none of the penal statutes which would afford the plaintiff a civil remedy against the insurance company apply under the facts of this case, I must dissent on the issue of penalties and damages.
NOTES
[1] No copy of this check is found in the record; however, a proposed bill of sale gives a sales price of $12,692.16.